## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MARTIN D. STARKEBAUM, | Case No. 26-cv-2401 (LMP/DJF) |
| Plaintiff, | |
| v. | **ORDER FOR REMAND** |
| PRECISION LOCATING, LLC; and ARVIG ENTERPRISES, INC., | |
| Defendants. | |

Martin D. Starkebaum, pro se.

Kurt J. Erickson and Benjamin D. Sandahl, **Littler Mendelson P.C., Minneapolis, MN**, for Defendants.

Plaintiff Martin D. Starkebaum, acting pro se, alleges violations of Title VII of the Civil Rights Act and Minnesota law by Defendants Precision Locating, LLC, and Arvig Enterprises, Inc., in a complaint captioned for filing in a Minnesota state court. Defendants removed the action to this Court. They now move to dismiss Starkebaum's complaint for insufficient service of process, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. Starkebaum moves to remand this case and opposes Defendants' motion to dismiss his[1] complaint.

---

[1] Although Starkebaum identifies as a transgender woman in an exhibit submitted by Defendants, ECF No. 11-3 at 2, Starkebaum refers to himself with male pronouns throughout his complaint, *see, e.g.*, ECF No. 1-1 ¶ 12. The Court therefore will also refer to Starkebaum with male pronouns.

As explained below, Defendants are correct that Starkebaum's attempt at service of process was ineffective.  But that means this matter never "commenced" under Minnesota law.  Accordingly, Starkebaum's motion to remand is granted, and Defendants' motion to dismiss is denied as moot.

## BACKGROUND

This lawsuit appears to be a new chapter in a long-running dispute between Starkebaum, Precision, and Arvig.  In short, Starkebaum, who was formerly employed by Precision, alleges that Defendants violated Title VII of the Civil Rights Act of 1964 and Minnesota law by engaging in unlawful conduct in connection with a September 2024 settlement agreement between Starkebaum and Precision.  *See* ECF No. 1-1 ¶¶ 6–90.

Starkebaum intended to bring suit in Minnesota state court.  *See* ECF No. 1-1 at 4; ECF No. 19 at 5.  Through a process server, Starkebaum attempted to personally serve copies of the summons and complaint on Defendants at their shared registered address on March 30, 2026.  *See* ECF No. 20-1 at 5, 7 (stating that "a copy of the Summons and Complaint" was served at "150 2nd Street Southwest, Perham, MN 56573"); ECF No. 11-1 at 2 (identifying that address as Precision's "Principal Executive Office Address"); ECF No. 11-2 at 2 (same as to Arvig).  The process server "hand[ed] to and le[ft]" copies of the summons and complaint with Josie Winkels, who was identified by the process server as Precision's and Arvig's "Corporate Secretary."  ECF No. 20-1 at 5, 7.  The process server's affidavits of service indicate that Winkels "stated she is authorized to accept service of process on behalf of" both Defendants.  *Id.*

2

Winkels, for her part, says she is Arvig's executive administrative assistant but is not "a member of management at Arvig" and has "never been an employee or representative of Precision." ECF No. 9 ¶¶ 1–2. She states that the process server "asked if [she] was the 'corporate executive administrative assistant,'" and when she said she was, the process server "left [her] with two sets of the Summons and the Complaint," which she signed for. *Id.* ¶ 3. Winkels says she is "not now and was not at the time . . . a person who could accept personal service of process of a Summons and Complaint on behalf of Arvig or on behalf of Precision." *Id.* ¶ 2.

On April 28, 2026, Defendants filed a notice of removal both in this Court and in state court, ECF No. 1; ECF No. 25-1 at 2, and simultaneously moved to dismiss Starkebaum's complaint. ECF No. 4. On May 6, 2026, Starkebaum filed a motion to remand, asserting that removal was improper. ECF No. 18.

## ANALYSIS

Under 28 U.S.C. § 1441, a civil action which has been "brought in a State court" may be removed to federal court so long as the federal court would "have original jurisdiction" over the action. 28 U.S.C. § 1441(a). The federal removal statutes are "strictly construed in favor of state court jurisdiction," *Capehart-Creager Enters., Inc. v. O'Hara & Kendall Aviation, Inc.*, 543 F. Supp. 259, 262 (W.D. Ark. 1982) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)), and any doubts about the propriety of removal are to be resolved in favor of remand, *see Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007).

There is no dispute that the Court has original jurisdiction over Starkebaum's Title VII claim. *See* ECF No. 19 at 8 (acknowledging that "the existence of a federal claim" in his complaint "would confer original jurisdiction"); ECF No. 24 at 3–4 ("Because the face of [Starkebaum's] Complaint present discrimination claims under federal law, . . . this Court has jurisdiction to hear [his] retaliation claims . . . ."); *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Instead, Starkebaum asserts that because he had not filed his complaint in state court when Defendants removed this case, Defendants' removal "does not satisfy the separate requirement that the action 'be brought in a State court' and 'pending' there." ECF No. 19 at 8 (quoting 28 U.S.C. §§ 1441(a), 1446(a)). That reasoning is not quite right, but Starkebaum is nonetheless correct that this case must be remanded because this action never "commenced" under Minnesota law.

Federal courts "understand the term 'brought' in § 1441(a) to mean 'commenced.'" *Metivier v. Deutsche Bank Tr. Co. Ams. ex rel. Residential Accredit Loans, Inc.*, No. 19-cv-2929 (ECT/BRT), 2020 WL 2215725, at *2 (D. Minn. May 7, 2020) (collecting cases); *see Lockhart v. CitiMortgage, Inc.*, No. 10-cv-4624 (DSD/FLN), 2011 WL 1790342, at *1 (D. Minn. May 10, 2011) ("Under the plain language of § 1441, an action must have commenced in state court before it can be removed to federal court."). Because this dispute originated in Minnesota, the Court looks to Minnesota law "to determine whether a state-court civil action has been 'commenced.'" *Metivier*, 2020 WL 2215725, at *3 (citing *MW Ag, Inc. v. N.H. Ins. Co.*, 107 F.3d 644, 646 (8th Cir. 1997)).

4

This case presents a conflict between the federal removal statutes and Minnesota's so-called "hip-pocket service" procedure, under which a plaintiff may "commence an action simply by service of the summons upon the defendant." *Gams v. Houghton*, 884 N.W.2d 611, 614 (Minn. 2016). Contrary to Starkebaum's argument, and unlike in federal court and the "great majority of state courts," a civil action is not "commenced" in Minnesota upon the filing of a complaint with a court. *Metivier*, 2020 WL 2215725, at \*3 (citations omitted). Rather, a civil action is "commenced" under Minnesota law in only one of three ways: (1) when a summons is personally served on the defendant; (2) when the defendant signs a waiver of service; or (3) when the summons is delivered to the sheriff in the county where the defendant resides. Minn. R. Civ. P. 3.01; *see* Minn. R. Civ. P. 5.04(a) (requiring a plaintiff to file the complaint "with the court within one year of commencement"); *see also Cox v. Mid-Minn. Mut. Ins. Co.*, 909 N.W.2d 540, 547 (Minn. 2018) (holding an "action did not commence" where service was determined to be insufficient). Accordingly, "[d]etermining whether a Minnesota state court action was 'brought' within the meaning of 28 U.S.C. § 1441(a) require[s] determining whether service occurred." *Metivier*, 2020 WL 2215725, at \*3; *see also Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend.").

Starkebaum acknowledges that he intended to "commence[] this action on March 30, 2026, by personally serving Defendants" with a summons and complaint. ECF No. 19 at 2; *see* ECF No. 20-1 at 5, 7. Under Minnesota law, for personal service of a

summons on a corporation (like Arvig) or an LLC (like Precision) to be effective, the summons must be served "by delivering a copy to an officer or managing agent, or to any other agent authorized expressly or impliedly or designated by statute to receive service of summons." Minn. R. Civ. P. 4.03(c). Such "other agent[s]," *id.*, include the entity's "registered agent" or a "manager[] or general partner of the entity," Minn. Stat. § 5.25, subd. 1. Alternatively, if "no agent, officer, manager, or general partner can be found" at the entity's registered address, the summons may be served on "the secretary of state." *Id.*

Starkebaum attempted to personally serve Defendants by having copies of the summons and complaint delivered to their shared registered address. *See* ECF No. 11-1 at 2; ECF No. 11-2 at 2; ECF No. 20-1 at 5, 7. The question, then, is whether Winkels— an executive administrative assistant at Arvig who accepted the copies of the summons and complaint, ECF No. 9 ¶¶ 1, 3—was authorized to accept service of process on behalf of either Defendant, *see* Minn. R. Civ. P. 4.03(c); Minn. Stat. § 5.25, subd. 1.

She was not. Starkebaum does not claim that Winkels is an officer of either Defendant but instead relies on the process server's affidavits of service, in which the process server stated that Winkels identified herself as the "Corporate Secretary" of both Defendants and that she is "authorized to accept service for" both Defendants. ECF No. 28 at 3; *see* ECF No. 20-1 at 5, 7. Winkels disputes that account of the events and states she identified herself as the "corporate executive administrative assistant" before signing for and accepting the copies of the summons and complaint. *See* ECF No. 9 ¶¶ 1–3. Defendants submit additional evidence that Winkels holds the title of "Executive Administrative Assistant" for Arvig, does not hold any position within the Board of

6

Directors for Arvig, is not an employee of Precision, and is not the "Corporate Secretary" for either Defendant. ECF No. 30 ¶¶ 3–4; ECF No. 31 ¶¶ 1, 3.

Administrative assistants who are "entrusted with the receipt of deliveries" generally are not "managing agent[s]" and are not authorized to accept personal service on behalf of a business entity. *Gables at Rsrv. Homeowners Assoc. v. Midwest Fam. Mut. Ins. Co.*, No. A20-1549, 2021 WL 3853051, at *2 (Minn. Ct. App. Aug. 30, 2021) (collecting cases). Notwithstanding the conflicting accounts as to whether Winkels stated she was authorized to accept service on behalf of either Defendant, "her self-designation as an administrative assistant and her willingness to accept process" are "insufficient to establish the requisite express or implied authority" to satisfy Minnesota's personal service rules. *Duncan Elec. Co. v. Trans Data, Inc.*, 325 N.W.2d 811, 812 (Minn. 1982); *see Gables*, 2021 WL 3853051, at *1–3 (holding service of process was insufficient where the summons was served on a corporation's "office services employee" who the process server's affidavit identified as a "Managing Agent"). And even though Winkels evidently "forwarded the summons and complaint to an officer or managing agent," and both Defendants are on notice of Starkebaum's intent to commence this action, "it doesn't matter: a defendant's actual knowledge of a lawsuit does not subject the defendant to personal jurisdiction absent compliance with the service requirements in Minn. R. Civ. P. 4.03."[2] *Gables*, 2021 WL 3853051, at *2 (citing *Thiele v. Stich*, 425 N.W.2d 580, 584 (Minn. 1988)).

---

[2]    One additional point is worth addressing. Starkebaum argues that even if Winkels was not a Precision employee, service on Arvig constituted service on Precision because

For these reasons, the Court concludes that Starkebaum's attempt to serve Defendants was insufficient under Minnesota law. Consequently, this action never "commenced," so removal is premature, "making remand necessary." *Metivier*, 2020 WL 2215725, at *3.

*Metivier*, a case from this District involving essentially the same issues and identified by both parties in their briefing, is instructive. In that case, the plaintiff "sent a summons, a complaint, and two copies of a waiver of service of summons form by certified mail to the two entities she thought were [the defendants'] respective agents for service of process." *Id.* at *1. One of those entities informed the plaintiff that it was not the intended defendant's registered agent, but the entity "evidently transmitted" the documents to that defendant, who then apparently notified the other defendant. *Id.* at *1–2. The defendants then filed a notice of removal in both federal and state court and filed answers to the complaint in federal court one week later. *Id.* at *2. The defendants later executed and filed waiver of service forms in the state court but not in federal court. *Id.* In granting the plaintiff's motion to remand, the court concluded that removal was premature because the action had not yet "commenced" under Minnesota law. Specifically, the court noted that

there is "overlap between the entities," citing their shared registered address and "a North Dakota Secretary of State foreign registration identifying Arvig . . . as registered agent for Precision." ECF No. 28 at 3; *see* ECF No. 28-1 at 24 (identifying Arvig as Precision's "Registered Agent" in North Dakota); ECF No. 11-1 at 2 (identifying an address in Perham, Minnesota, as Precision's "Principal Executive Office Address"); ECF No. 11-2 at 2 (identifying the same address as Arvig's "Principal Executive Office Address"). But Precision's Minnesota business registration information shows it has no "Registered Agent(s)." ECF No. 11-1 at 2. And in any event, Starkebaum's attempted service on Arvig was ineffective, so it necessarily could not have been effective as to Precision even if there were sufficient evidence to establish an agency relationship between Defendants.

even though "waiver of service forms were executed and filed with the state district court, the execution of the forms occurred after removal and was, in any event, untimely," so the action had not commenced under Minn. R. Civ. P. 3.01(b). *Id.* at *3 (citing Minn. R. Civ. P. 4.05(a)(5)). And there was "no suggestion" that the defendants had "ever been served personally or that process was delivered to a sheriff," so the action could not have commenced under the remaining methods identified in Rule 3.01. *Id.*; *see* Minn. R. Civ. P. 3.01(a), (c).

Defendants attempt to distinguish *Metivier* by suggesting its conclusion rested on the fact that the plaintiff "served the wrong defendant[s]," never attempted to personally serve the correct defendants, and the defendants in that case did not contest the sufficiency of service. ECF No. 24 at 5 n.1. These distinctions are beside the point. The bottom line in *Metivier* is that removal was premature because the action had not commenced under Rule 3.01. *See* 2020 WL 2215725, at *3. The same is true here. As Defendants themselves argue, *see* ECF No. 6 at 10–13, Starkebaum's attempt to personally serve Defendants was ineffective because Winkels was not authorized to accept personal service on behalf of either Defendant—that is, Starkebaum served the wrong person—so the action did not commence under Rule 3.01(a), *see Duncan Elec. Co.*, 325 N.W.2d at 812; *Gables*, 2021 WL 3853051, at *2; *see also Cox*, 909 N.W.2d at 547. And there is no evidence that Defendants have waived service or that Starkebaum delivered the summons and complaint to a sheriff, so the action did not commence under Rule 3.01(b) or (c). The Court agrees with the conclusion in *Metivier* that removal is premature, and remand is required, when an action has not formally commenced under the laws of the state from which it was

9

removed.   *See* 2020 WL 2215725, at *3; *see also Lockhart v. CitiMortgage, Inc.*, No. 10-cv-4324 (DSD/FLN), 2011 WL 1790342, at *2 (D. Minn. May 10, 2011) (remanding case where removal was "premature" because "service was never perfected, and the action did not commence before removal").

As the *Metivier* court observed, this outcome is a product of the incongruence between Minnesota's commencement rules and the federal removal statutes. *See id.* ("The federal removal statutes are not a perfect fit in cases removed from state courts where, like Minnesota's, an action is commenced on service and not on filing.").  One need only look at the filings in this case to see how this occasional incompatibility yields internally inconsistent arguments.   On the one hand, Defendants argue that this case must be dismissed for insufficient service of process, ECF No. 6 at 10–13, which undermines their argument against remand because it would mean this case never commenced under Minnesota law and therefore was not removable, *see Metivier*, 2020 WL 2215725, at *3. On the other hand, Starkebaum maintains that his attempt at service *was* effective, ECF No. 28 at 2–4, which undermines his argument *for* remand because it would mean the case *did* commence under Minnesota law and *was* removable given the Court's original jurisdiction over his Title VII claim, *see* 28 U.S.C. § 1441(a).

Ultimately, the Court must resolve any doubts about the propriety of removal in favor of remand.  *See Dahl*, 478 F.3d at 968.  There is more than enough reason to doubt the propriety of removal here given the lack of indication that this action ever commenced

in the first place.[3]  Accordingly, the Court remands this action to the state court in which Defendants filed their notice of removal.

Finally, Starkebaum requests an award of "his just costs and actual out-of-pocket expenses incurred as a result of the improper removal."  ECF No. 19 at 12.  Upon remanding a case that was improperly removed, the Court "may require payment of just costs and any actual expenses," 28 U.S.C. § 1447(c), but "only where the removing party lacked an objectively reasonable basis for seeking removal," *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).  Although the Court concludes that removal was improper here, that is largely attributable to the incongruence between Minnesota's commencement procedures and the federal removal statutes.  Defendants are correct that, had this action "commenced" under Minnesota law, it would have been removable because the Court has original jurisdiction over Starkebaum's Title VII claim, as Starkebaum himself acknowledges.  *See* ECF No. 19 at 8.  The Court therefore declines to award Starkebaum any costs or expenses because Defendants had an objectively reasonable basis for seeking removal.  *Martin*, 546 U.S. at 141.

---

[3]     The Court notes that "an unsuccessful first attempt at removal does not necessarily prohibit a second attempt."  *Metivier*, 2020 WL 2215725, at *3; *see Cooper v. S & H Inc.*, No. 11-cv-2783 (JNE/SER), 2012 WL 245116, at *2 (D. Minn. Jan. 25, 2012) (quoting *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 782–83 (7th Cir. 1999)) (noting that an "unsuccessful earlier attempt to remove is not dispositive" and that if the circumstances that "justified remand" change, the case "may be removed, provided only that it is less than one year old").  Therefore, if this action commences after remand—for example, upon effective personal service by Starkebaum or waiver of service by Defendants, *see* Minn. R. Civ. P. 3.01(a)–(b)—"then a second attempt at removal may be where this case is headed," *Metivier*, 2020 WL 2215725, at *3.

## CONCLUSION

For these reasons, and on all the files, records, and proceedings in this matter, **IT IS**

**HEREBY ORDERED** that:

1.   Starkebaum's Motion To Remand (ECF No. 18) is **GRANTED**;

2.   This matter is **REMANDED** to the District Court of the State of Minnesota, Tenth Judicial District, County of Anoka; and

3.   Defendants' Motion To Dismiss (ECF No. 4) is **DENIED** as moot.

Dated: July 17, 2026                    *s/Laura M. Provinzino*

                                        Laura M. Provinzino
                                        United States District Judge